UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| YEI A. SUN and LIPING M. SUN, husband and wife; and HAIMING OWEN SUN, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED CHINA HEALTHCARE, INC., a Cayman Islands company; and ALICIA KAO, an individual,<br><br>Defendants. | No.<br><br>**COMPLAINT**<br><br><u>JURY DEMAND</u> |

For their Complaint, Plaintiffs allege as follows:

### INTRODUCTION

This is an action under the Washington State Securities Act, RCW § 21.20.005 *et seq.* ("WSSA"), to rescind the purchase and sale of stock in Defendant Advanced China Healthcare, Inc.

### I.   PARTIES

1. Plaintiffs Yei A. ("Albert") Sun and Liping M. Sun are husband and wife and are residents of the State of Washington.

2. Plaintiff Haiming Owen Sun is a resident of the State of Washington.

3. Defendant Advanced China Healthcare, Inc. is a Cayman Islands company.

COMPLAINT - 1

SAVITT BRUCE & WILLEY LLP
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500

4.      Defendant Alicia Kao is a resident of the State of California.

## II.   JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and Plaintiffs and Defendants are citizens of different states.

6.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## III.  FACTUAL ALLEGATIONS

7.      On or about December 23, 2010, Defendant Alicia Kao traveled to Seattle, Washington where she met with and solicited Plaintiffs to invest in Defendant Advanced China Healthcare, Inc. ("ACH") in its Series B offering.

8.      Kao represented that she was the President and an officer of ACH. Kao also represented that she was the President and CEO of American Surgery Centers and American Sports Medicine Centers.

9.      In the course of her solicitations to Plaintiffs, Kao represented, *inter alia*, that (a) she was the President of ACH; (b) ACH was formed to provide Western-style medical services in China, including sports medicine, pain management, physical therapy and men's health, and would be providing such services to a growing market of Chinese nationals and expatriates; (c) ACH was an established and well-funded entity, *e.g.*, (i) ACH had received initial angel funding in in 2005 and also subsequent substantial series seed funding, and (ii) Paul Hastings LLP and Robert A. Claassen were legal counsel to ACH and ACH had an office at Paul Hasting's Palo Alto offices; (d) all necessary government licenses and permits had been granted to ACH and the first ACH medical center would open in Shanghai in March 2011, with additional medical centers in Beijing, Pudong, and Hangzhou to open in 2012; (e) ACH had an established team of top surgeons, including Series A shareholders such as Dr. Thomas Clanton, who was Yao Ming's physician, numerous professionals affiliated with the Andrews Sports

Medicine and Orthopaedic Center, the Chairman and former Chairman of the Department of Orthopaedic Surgery for the University of Texas Health Science Center at Houston, and surgeons for numerous professional athletes; and (f) ACH had strategic partnerships with (i) GE Healthcare China, (ii) Shanghai Housing, Inc., (iii) the European Academy of Anti-Aging and Longevity Medicine, (iv) the American Orthopaedic Society for Sports Medicine, (v) Siemens Healthcare Systems, and (vi) Smith & Nephew PLC.

10. In the course of solicitations to Plaintiffs to invest in ACH, Kao represented that all funds would be used for the development of medical centers in China. Kao further represented that a healthcare venture fund based in Alabama, Brookline ACH Investment Fund, LLC, had engaged in extensive due diligence of ACH and, as a result, was investing in ACH's Series B offering.

11. In late December 2010 and early January 2011, Plaintiff Albert Sun had email and telephone communications with Robert A. Claassen, who was, at the time, a partner in Paul Hastings LLP and resident in the firm's Palo Alto, California office, where he was the Chair of the corporate department.

12. On or about December 23, 2010, Claassen sent a PowerPoint "Investor Presentation" to Plaintiff Albert Sun.

13. In the course of his communications with Sun, Claassen also represented, *inter alia*, that (a) ACH was a good investment, (b) he had personally invested in ACH, (c) Paul Hastings was invested in ACH, (d) he wasn't charging ACH for his services, and (e) extensive due diligence regarding ACH had been done by the Brookline fund.

14. On or around January 6, 2011, and in reasonable and justifiable reliance on the representations of Kao, Albert Sun and Liping M. Sun executed a Series B Preference Share Purchase Agreement, pursuant to which the Suns invested $1,400,000 in ACH.

15. On or about January 6, 2011, and in reasonable and justifiable reliance on the representations of Kao, Owen Sun executed a Series B Preference Share Purchase Agreement, pursuant to which Sun invested $1,400,000 in ACH.

16. On or about January 11, 2011, and in reasonable and justifiable reliance on the representations of Kao, Plaintiffs sent by wire transfer a total of $2,800,000 to Paul Hastings' IOLTA account in Los Angeles, California.

17. In October 2012, an attorney at Paul Hastings working under the direction of Claassen provided Owen Sun with a capitalization table for ACH, which capitalization table purported to list "Authorized Capital Stock" for ACH and included a schedule of purported Series B Preference Shareholders, including Albert Sun, Liping Sun, and Owen Sun, as well as the Brookline fund.

18. In January 2013—some two years after Plaintiffs' investment—Paul Hastings sent Owen Sun a stock certificate ostensibly representing his ownership of Series B Preference Shares in ACH. Plaintiffs Albert Sun and Liping Sun have never received any such stock certificate.

19. In December 2014, Plaintiffs learned that (a) they were not listed in ACH's registry of stockholders as maintained by Maples and Calder, ACH's Cayman Islands counsel; and (b) according to Maples and Calder's records, no Series B Preference Shares were ever authorized or issued by ACH. Additionally, Dr. Thomas Clanton was not a Series A shareholder according to Maples and Calder's records.

20. In or around January 2015, Plaintiffs discovered that, contrary to Kao's prior representations, ACH's prior financial records were fabricated and incorrect, ACH had not received series seed funding as represented, and Plaintiffs' investment monies have not been used for the development and opening of medical centers. Instead, on information and belief, Kao converted and misappropriated Plaintiffs' investment monies for her own use and/or to cover up her prior theft and misappropriation of series seed funding and/or other investment funds.

### IV.   CAUSES OF ACTION

21. Plaintiffs reallege and incorporate by reference the allegations of Paragraphs 1 – 20 above.

22. RCW § 21.20.010 provides that

[i]t is unlawful for any person, in connection with the offer, sale or purchase of any security, directly or indirectly:

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading; or

(3) To engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

23. Kao's representations to Plaintiffs on behalf of ACH comprised violations of RCW § 21.20.010.

24. ACH is liable to Plaintiffs as a "seller" of securities under RCW § 21.20.430(1).

25. Kao is liable to Plaintiffs as a control person of ACH under RCW § 21.20.430(3).

26. Additionally, or in the alternative, Kao is liable to Plaintiffs as a "seller" under RCW § 21.20.430(1) because her conduct was a substantial contributive factor in Plaintiffs' purchase of ACH stock.

## V.   JURY DEMAND

In accordance with Fed.R.Civ.P. 38 and LCR 38(b), Plaintiffs hereby demand a trial by jury trial for all issues so triable.

## VI.   PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court grant the following relief:

A. Judgment against Defendants, jointly and severally, under the WSSA;

B. Rescission of their purchase of stock in ACH and payment in the amount of their purchase price of $2,800,000, together with interest on that amount at the rate of 8% per annum, or rescissionary damages in the same amount;

C. An award of attorneys' fees and costs in accordance with RCW § 21.20.430 and as otherwise permitted by law; and

D. For any other relief that the Court deems just and proper.

COMPLAINT - 5

1 | DATED:  August 28, 2015.

**SAVITT BRUCE & WILLEY LLP**

By:     /s/ Stephen C. Willey
By:     /s/ Matthew H. Rice
   Stephen C. Willey, WSBA #24499
   Matthew H. Rice, WSBA #44034
   1425 Fourth Avenue, Suite 800
   Seattle, WA  98101-2272
   Tel: (206) 749-0500; Fax (206) 749-0600
   Email: swilley@sbwllp.com
              mrice@sbwllp.com

*Attorneys for Plaintiffs*

COMPLAINT - 6

**SAVITT BRUCE & WILLEY LLP**
1425 Fourth Avenue Suite 800
Seattle, Washington  98101-2272
(206) 749-0500